Arnold MELTON, Anthony Locke, John Diaz, Lamont C. Bullock, John Passmore, Tarik Briggs, Joseph Holquin, Justin Lee Clemens, Tyrone Sanders

v.

Jeffrey A. BEARD, Secretary of the Department of Corrections and John Palakovich, Superintendent of the SCI–Smithfield

Appeal of: John Diaz and Lamont C. Bullock.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 15, 2009.
Decided July 21, 2009.
Publication Ordered Oct. 2, 2009.

John Diaz and Lamont C. Bullock, appellants, pro se.

Raymond W. Dorian, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for appellee.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY President Judge LEADBETTER.

John Diaz and Lamont C. Bullock (collectively "inmates") appeal *pro se* from the February 4, 2008 order of the Court of Common Pleas of Huntingdon County (trial court) that sustained the preliminary objections of prison officials Jeffrey A. Beard, Ph.D., Secretary of the Pennsylvania Department of Corrections, and John Palakovich, former Superintendent at SCI–Smithfield, and dismissed the inmates' complaint. We affirm.

The background of this case is as follows. In August 2007, the inmates filed a complaint against the prison officials challenging the constitutionality of Department of Corrections' policy DC–ADM 801, entitled "Inmate Discipline Policy." The inmates alleged that the policy was void for vagueness and violated the Due Process clauses of both the United States and the Pennsylvania Constitutions. They averred that prison officials cited them with various misconducts, that they received disciplinary custody as a result of those charges and that the hearing examiner arbitrarily denied their requests to present witnesses and evidence. Finally, they requested compensatory and punitive damages.

■ In October 2007, the prison officials filed preliminary objections to the complaint in the nature of a demurrer, alleging that the inmates failed to state a claim against them. The trial court sustained the prison officials' demurrer and dismissed the action. The inmates' timely appeal to this Court followed.[1]

■ The inmates argue that the trial court erred in sustaining the prison officials' preliminary objections because the facts alleged in the complaint, the documents on file and all logical inferences deducible therefrom establish that the Inmate Discipline Policy fails to comply with 37 Pa.Code § 93.10(a) requiring the Department to establish "[r]ules which define expectations and prohibitions for inmate behavior." Specifically, they maintain that the policy is non-compliant because it sets forth fifty-two misconduct charges, fifty-one of which have no definitions. They note that the United States Supreme Court has held that it is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Further, they note that courts have demanded definitional sections in order to prevent arbitrary and discriminatory enforcement. *Commonwealth v. Mayfield*, 574 Pa. 460, 832 A.2d 418 (2003).

In response, the prison officials acknowledge that, under the void-for-vagueness doctrine, a statute must define unlawful conduct with sufficient definiteness to enable an ordinary person to understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *Commonwealth v. Hendrickson*, 555 Pa. 277, 724

1. Our review of an order of a trial court sustaining preliminary objections in the nature of a demurrer is limited to determining whether it committed an error of law. Further, "in ruling upon preliminary objections, the court must accept as true all well-pled allegations of material fact. A demurrer should be sustained only in cases that are free from doubt and only when it appears with certainty that the law permits no recovery under the allegations made." *Dixon v. Cameron County Sch. Dist.*, 802 A.2d 696, 698 n. 3 (Pa.Cmwlth.2002) (citations omitted).

A.2d 315 (1999). They argue, however, that the trial court correctly determined that the doctrine applies only to penal statutes and not to schemes for prison discipline. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Mayfield.* If we conclude that the doctrine does apply to the Inmate Discipline Policy, then the prison officials maintain that the policy is not void for vagueness because it sufficiently defines what constitutes a violation for purposes of inmate conduct.

■ We agree that the trial court did not err in concluding that the void-for-vagueness doctrine applies only to penal statutes. Notwithstanding the inapplicability of the doctrine to the disciplinary policy, however, we agree with the trial court that a person of ordinary intelligence could decipher the nature of the misconducts of the two inmates who filed this appeal, so, without addressing all possible applications of the policy, it is not void for vagueness as to them.[2] In their complaint, the inmates averred that prison officials charged and punished Diaz for escape, a criminal violation of the Pennsylvania Crimes Code and possession of contraband. Paragraph 19; Supplemental Reproduced Record "S.R.R." 11b. They averred that officials charged and punished Bullock for refusing to obey an order, lying to an employee and threatening an employee. Para. 20; S.R.R. 11b.

Moreover, we note, as did the trial court, that there are procedures in place under the policy requiring service upon an inmate of a copy of the misconduct report setting forth the factual basis upon which the charges are based. In other words, the policy mandates that an inmate be apprised of the conduct alleged to have violated the policy. Accordingly, we conclude that the record establishes that the inmates were adequately given notice of their conduct that violated the policy.

■ The inmates next contend that the trial court erred in not addressing their contention that they suffered a denial of due process of law during their disciplinary hearings. They note that the United States Supreme Court in *Wolff* ruled that inmates are entitled to numerous due process protections in disciplinary proceedings. In *Sinde v. Gerlinski,* 252 F.Supp.2d 144, 149 (M.D.Pa.2003), the Court listed the *Wolff* protections:

(1) the inmate must receive no less than twenty-four hours advance written notice of the claimed violations; (2) the inmate must receive a written statement of the fact finder as to the evidence relied upon and the reasons for the disciplinary action taken; (3) the inmate must be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (4) the inmate must be allowed to seek the aid of a fellow inmate or staff member; and (5) the disciplinary hearings must be impartial. *Wolff v. McDonnell,* [418 U.S. 539, 564–70, 94 S.Ct. 2963, 2979–81, 41 L.Ed.2d 935, 956–59 (1974).] According to the Court, however, confrontation and cross-examination are not constitutional requirements in a disciplinary hearing. *Id.* at 567, 94 S.Ct. 2963.

Relying on *Wolff,* the inmates allege that they were not afforded full and fair hearings before an impartial tribunal. They make general allegations that the disciplin-

---

**2.** In response to the inmates' concern that the prison officials failed to include in the reproduced record either the Inmate Disciplinary Policy or the pertinent provisions of the Pennsylvania Code, we note that both are part of the original record certified to this Court, and we have reviewed them therein.

ary policy allowed the hearing examiner to "deny all request[s] for witnesses, to present evidence and documentary evidence," to base his decision on hearsay, specifically the misconduct report, and to use an inappropriate standard of proof.

■ In response, the prison officials acknowledge the applicability of *Wolff,* but maintain that the policy complies with all of its requirements.[3] Additionally, they point out that an inmate's due process rights in the context of disciplinary hearings are limited. We agree that an inmate simply does not enjoy the same panoply of procedural rights afforded a criminal defendant. As noted above, the right of confrontation does not apply in a disciplinary hearing, so hearsay may be relied upon. In addition, disciplinary actions need only be supported by some evidence. *Superintendent v. Hill,* 472 U.S. 445, 454–55, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356, 363–64 (1985). Finally, with respect to the right to present evidence, the inmates' conclusory allegations do not make clear whether they are simply challenging the policy itself, which allows discretion to the hearing examiner to grant or deny a request for witnesses,[4] whether they were claiming they could not prepare a defense because the charges were not sufficiently defined (a claim we have already rejected)[5] or whether a request to offer wit-

---

**3.** The policy, *inter alia,* provides:

6. Inmate Version—At the hearing, the charge(s) shall be read to the inmate. The Hearing Examiner shall request the inmate's plea to each individual charge. The inmate may submit a written version or may orally present his/her version that shall be summarized as part of the hearing record.[21]

7. Witnesses

The Hearing Examiner may approve the presence of any staff member or witness, only if the staff member or witness has knowledge of the incident, is present on facility grounds, and only if the testimony is needed to establish the guilt or innocence of the inmate.[22]

a. Up to three relevant witnesses, who have been properly requested per Section E. 7.a. above, shall be permitted. One of the three witnesses may be the staff member who witnessed the misconduct violation, or the charging staff member.[23]

(1) The inmate must state on the DC–141, Part II(A) why the witness is relevant to the hearing. The witness must be a staff member, official volunteer, contract employee, or an inmate, unless the hearing is conducted at a CCC, where civilian witnesses may be permitted. If the Hearing Examiner denies the requested witness, the reasons for denying such a request shall be stated in writing.[24]

(2) If the inmate properly requests a witness who is not available a[sic] the time of the hearing, the inmate may elect to either waive the seven working days hearing requirement or to have the witness execute a written statement under oath which shall be presented in lieu of live testimony (or subject to the penalties for unsworn falsification to authorities). If the inmate elects to have the witness present, the hearing shall be rescheduled at the earliest time after the witness is available.

(3) If an inmate witness or assistant becomes disruptive at the hearing or refuses to follow the instructions given by the Hearing Examiner, he/she shall be removed and the hearing conducted without the witness or assistant being present.

b. The Hearing Examiner may question any witness. The charged inmate shall be permitted a reasonable opportunity to pose relevant questions to any adverse witness. The Hearing Examiner shall control the extent of questioning.

21. 4–4242, 1–ABC–3C–09.
22. 4–4242, 1–ABC–3C–09.
23. 4–4242, 1–ABC–3C–09.
24. 4–4242, 1–ABC–3C–09.

**4.** We do not find this policy itself to violate the dictates of *Wolff,* although, of course, an abuse of the hearing examiner's discretion as applied in a given situation could amount to a due process violation.

**5.** For example, the inmates averred as follows:

26. Because Defendants failed to define the misconduct charges of which each plaintiff was disciplined, neither plaintiff

nesses was actually made and denied. Reading the claim in the context of the entire complaint and the responses to preliminary objections, the last alternative seems unlikely. At all events, there is no allegation that any particular evidence or witness was requested or denied, and the conclusory allegations asserted are simply insufficient to survive the prison officials' demurrer.

We note that in determining whether to sustain the prison officials' preliminary objections, the trial court was not obliged to accept the inmates' conclusions of law or expressions of opinion that they suffered a deprivation of due process by virtue of the hearing examiner's treatment or rulings in their respective misconduct proceedings. *Commonwealth v. Richmond Twp.,* 917 A.2d 397 (Pa.Cmwlth.2007) (court considering preliminary objections need not accept conclusions of law or expressions of opinion). Accordingly, we reject the inmates' contention regarding the lack of due process at their disciplinary proceedings.

For the above reasons, we affirm.

### ORDER

AND NOW, this 21st day of July, 2009, the order of the Court of Common Pleas of Huntingdon County in the above captioned matter is hereby AFFIRMED.

could defend against the charges in a[sic] adequate or procedural [sic] acceptable manner.